# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL NO. 5:03CV146-H

|  |  |  |
|---|---|---|
| **MARKET CHOICE, INC.,** | ) |  |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
|  | ) |  |
| **MH/1993/FOODS, INC., d/b/a** | ) |  |
| **MICHELLE FOODS, INC., and** | ) |  |
| **MICHELLE FOODS ENTERPRISES,** | ) |  |
| **INC.,** | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on the "Plaintiff's Motion to Show Cause and for Default Judgment" (document #33) filed October 25, 2005. Despite the fact that the Plaintiff is seeking a default judgment in excess of $950,000, plus an Order holding the Defendants and defense counsel, Freddie L. Woods, Jr., in contempt of Court for failing to pay monetary sanctions as they had been ordered previously to do, and the Court's repeated warnings of the consequences of the Defendant's continued failure to comply with the Court's Orders, the Defendants have not filed a responsive brief to the Plaintiff's Motion, and the time for filing a response has long expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for determination.

Having carefully considered the arguments, the record, and the applicable authority, the undersigned will grant in part and deny in part the Plaintiff's motion, as discussed below.

# I. FACTUAL AND PROCEDURAL HISTORY

This is an action seeking damages for breach of an alleged contract whereby the Plaintiff Market Choice, Inc., located in Mooresville, North Carolina, agreed to serve as National Sales Manager for the Chicago-headquartered Defendants MH/1993/Foods, Inc., d/b/a Michelle Foods, Inc., and Michelle Foods Enterprises, Inc., from July 1, 2002 through June 30, 2004, in exchange for the payment of sales commissions.

Relevant to the pending motion, on November 13, 2003, the Plaintiff filed its initial Complaint.

On December 8, 2003, the Plaintiff filed an Amended Complaint and also served its "First Request for Production of Documents," which sought, among other things, production of all documentation of the Defendants' gross and net sales from 1995 through 2004, any and all documents relating to the Defendants' corporate structure, including their Articles of Incorporation, and all documentation of communications between the Plaintiff and Defendants, including contracts, faxes, letters, e-mail, and audio and/or video recordings of oral communications between them.

On December 17, 2003, Plaintiff's counsel, Robert C. Dortch, Jr., and the Defendants' then-counsel met and, among other things, the Defendants agreed to produce certain financial information that purportedly would address the magnitude of the Plaintiff's potential damages. Subsequently, however, the Defendants produced only two pages of information, apparently a summary of the Defendants' sales during the relevant period.

On February 5, 2004, with the agreement of the parties, the undersigned entered a "Protective Order."

On August 3, 2004, counsel for the parties filed their "Certification and Report of Initial

Attorneys' Conference."

On October 8, 2004, the Defendants' former counsel was permitted to withdraw from the case. See "Order" (document #16).

On October 21, 2004, the undersigned conducted the Initial Pretrial Conference ("IPC") with counsel in chambers. The Defendants' present counsel, Freddie L. Woods, Jr., attended the IPC and entered an appearance on behalf of the Defendants. During the conference, the Court instructed the parties to complete preliminary matters, including responding to outstanding discovery requests, in a timely fashion.

On December 3, 2004, the Plaintiff served its "First Set of Interrogatories" on the Defendant. At the same time, the Plaintiff also requested by letter that the Defendants identify "two or three blocks of dates" for the Plaintiff to depose the Defendants' President, Michelle Hoskins, and two non-party witnesses.

Receiving no response from Mr. Woods, on January 7, 2005, Plaintiff's counsel wrote again, this time requesting responses to the outstanding Requests to Produce and Interrogatories and seeking dates for depositions.

On February 3, 2005 – still having heard nothing from the Defendants – the Plaintiff filed its "Motion to Strike Defendant's Answer and Enter Judgment, or in the Alternative, to Compel Responses to its First Request for Production of Documents and First Set of Interrogatories and for Sanctions," that is, costs and attorneys' fees incurred in preparing and filing that motion. The Plaintiff also sought the further sanction that Ms. Hoskins be required to give her deposition in Charlotte, North Carolina, rather than in Chicago, on a date mutually convenient to the parties.

As noted above, the Defendants never responded to the Plaintiff's initial motion.

On March 8, 2005, the Court <u>granted in part</u> and <u>denied in part</u> the Plaintiff's motion, that is, after examining the subject discovery requests, the undersigned concluded that "Plaintiff clearly is entitled to ... complete responses to its written discovery requests," and the Defendants were ordered "on or before April 15, 2005 ... [to] serve complete responses to the Plaintiff's 'First Request for Production of Documents' and 'First Set of Interrogatories.'"  "Memorandum and Order" at 5 (document #23).  The Court also warned the Defendants:

> that any failure to respond to the Plaintiff's Requests to Produce and Interrogatories as ordered ... to fail to respond to any other of the Plaintiff's reasonable discovery requests, or to otherwise comply fully with any of the Court's Orders, the Local Rules, or the Rules of Civil Procedure <u>will</u> result in the imposition of sanctions. **Sanctions can include the Defendants being required to pay the Plaintiff's costs, including an award of reasonable attorney's fees <u>against the Defendants and/or their counsel</u>, and may also include entry of judgment on the Plaintiff's claims.**

<u>Id.</u> (emphasis in the original).

On April 14, 2005, the Defendants served their purported responses to the outstanding discovery, but the responses were deficient in several ways.  Most significantly, the Defendants belatedly interposed objections to some of the Plaintiff's discovery requests on grounds of their allegedly being "overly broad, unduly burdensome ... [or not] relevant," and relying on those objections, unilaterally confined their production of documents to purchase orders and tax returns from 2002 and 2003, rather than producing all requested sales-related documents, for example, invoices and profit and loss statements, from 1995 through 2004, and refused to produce documentation of correspondence between the parties or of the Defendants' corporate structure. Additionally, the Defendants failed to enclose a verification signed under oath by Ms. Hoskins or some other authorized person.

On May 9, 2005, Mr. Dortch wrote Mr. Woods, addressing the above-noted deficiencies in

4

the Defendants' production and stating that if supplemental responses were not served promptly, the Plaintiff would renew its motion with the Court.

On May 20, 2005, and having heard nothing from Mr. Woods, the Plaintiff filed its "Motion to Show Cause and for Default Judgment, or in the Alternative, Motion to Compel Responses and for Sanctions," in which it re-stated its earlier requests for relief, that is, the Plaintiff asked the Court to enter a default judgment in its favor in the amount of $950,000, plus attorneys' fees, or in the alternative, to again compel the Defendants to serve complete responses to the Plaintiff's "First Request for Production of Documents" and "First Set of Interrogatories," to require the Defendants to pay the Plaintiff's attorneys' fees that were incurred in the preparation and prosecution of this motion, and to order Ms. Hoskins to appear for her deposition in Charlotte, North Carolina.

In their response brief, the Defendants repeated the above-noted generalized objections to the outstanding discovery requests and contended that the documents they have already produced establish that the Plaintiff developed, at most, two new accounts for the Defendants and that the commissions to which Plaintiff is entitled, if any, are considerably less than the amount that the Plaintiff seeks in its present motion.

Additionally, by way of explaining the Defendants' failure to respond sooner, Mr. Woods represented that he intended to deliver the Defendants' discovery responses to Mr. Dortch personally at his office in Charlotte on February 22, 2005, but that Mr. Woods missed his flight from Chicago due to an automobile accident and ensuing traffic jam while he was driving to the airport. However, Mr. Dortch credibly responded that Mr. Woods never communicated his intentions to meet with him on February 22, and that, in fact, Mr. Dortch was in court in the morning and attending out-of-town depositions during the afternoon of February 22, 2005.

Moreover, the Defendants have offered no credible justification for their failure initially to respond timely to the Plaintiff's discovery requests, or their failure subsequently to respond to the Plaintiff's February 3, 2005 "Motion to Strike Defendant's Answer and Enter Judgment, or in the Alternative, to Compel Responses ... and for Sanctions," discussed above. Finally, Mr. Woods admitted that in the intervening 10 days between his receipt of Mr. Dortch's May 9, 2005 letter and the filing of the Plaintiff's second motion, he not only failed to respond to the letter, but also never brought the matter to the attention of his clients, a failing that, like the others discussed above, he attributed to his busy schedule.

On June 27, 2005, the Court <u>granted in part</u> and <u>denied in part</u> the "Plaintiff's Motion to Show Cause and for Default Judgment, or in the Alternative, Motion to Compel Responses and for Sanctions." <u>See</u> "Memorandum and Order" at 10-11 (document #27). Specifically, the undersigned <u>ordered</u> the Defendants to serve complete verified supplemental responses to the Plaintiff's "First Request for Production of Documents" and "First Set of Interrogatories" on or before July 31, 2005; the Defendant's principal, Ms. Hoskins, to appear for her deposition no later than August 31, 2005, at a location in Charlotte, North Carolina designated by the Plaintiff; Mr. Woods to bear the cost of his travel to and from Ms. Hoskins' deposition out of his personal funds; and Mr. Woods and the Defendants each to pay one-half of the attorneys' fees and other costs that the Plaintiff incurred concerning that motion.

On July 7, 2005, the Defendants filed a "Motion to Alter or Amend Judgment," in which Mr. Woods contended that because of "exigent circumstances surrounding any inadvertence on [his] part," the Court should reconsider its June 27, 2005 Memorandum and Order, that is, that Mr. Woods has failed to competently and timely perform his duties in this case because he suffers from

depression, and, accordingly, the Court should not require Mr. Woods or the Defendants to pay the Plaintiff any attorneys' fees.   Specifically, Mr. Woods represented that during a four-month period sometime in 2000, he suffered and was treated for depression, which subsided; and that although he did not again seek treatment for the condition until very recently, that is, August 5, 2005, he believed that in November 2004, shortly after he made an appearance in this case, he again began to suffer depression due to work-related pressure.

As the Plaintiff pointed out in its brief opposing the Defendants' "Motion to Alter or Amend Judgment," in the Defendant's response to the initial "Plaintiff's Motion to Show Cause and for Default Judgment," Mr. Woods attributed his failure to promptly respond to discovery and this Court's Orders to his busy schedule, particularly to being a sole practitioner who was overwhelmed with the "business side of his practice" as the April 15, 2005 tax deadline approached.   In the Defendants' Motion to Alter or Amend Judgment, however, Mr. Woods stated that the opposite was true, that is, that beginning in November 2004 and because of the recurrence of his depression, he began "shrinking [his] practice to a small number of cases that [he] c[ould] handle."  Document #28 at 3.

Along with the Defendants' Reply in Support of the Defendants' Motion to Alter or Amend Judgment, Mr. Woods submitted for in camera review two pages of medical records, which showed that on August 5, 2005, Mr. Woods was seen for an "Initial Interview" in the Mental Health Department at Mercy Hospital in Chicago, Illinois, and was diagnosed with "mild" depression.  On August 10, 2005, Mr. Woods was seen again, but expressed  "reluctan[ce] to take mood stabilizing medication lest he lose his personality."  Mr. Woods was directed to return in one week, apparently, August 17, 2005, "to further discuss his options."

At the same time, the Defendants also submitted an "Affidavit of Michelle Hoskins," dated July 29, 2005, in which Ms. Hoskins stated that although Mr. Woods had informed her of his "medical treatment," she would "not turn [her] back on him," but would attempt to retain local counsel "to monitor the litigation." Sixth Exhibit to "Defendants' Reply in Support of the Defendants' Motion to Alter or Amend Judgment" (document #30).

Although in the Defendants' Motion to Alter or Amend Judgment, Mr. Woods indicated an intention to withdraw from this case, he concluded the Defendants' Reply with the "hope" that after he began taking medication, he could "re-introduce [himself] to the Court and [opposing] counsel." Document #30 at 4.

On August 16, 2005, the undersigned <u>denied</u> the Defendants' Motion to Alter or Amend the June 27, 2005 Memorandum and Order, stating:

> [I]t is entirely appropriate and, in fact, necessary as a deterrent of further misfeasance that the Defendants and Mr. Woods share in reimbursing the Plaintiff for the attorneys' fees it incurred in the preparation and prosecution of its "Motion to Show Cause and for Default Judgment." Indeed, Mr. Woods has shown the Court nothing that would justify his or his clients' failure to promptly and fully respond to the Plaintiff's discovery requests and otherwise comply with this Court's Orders. Rather, if anything, Mr. Woods' alleged depression and manifest professional shortcomings are factors that he and his clients should consider in determining whether he should continue to represent the Defendants in this case. For so long as Mr. Woods remains as counsel of record, however, he shall be held to the same standards of professional competence and conduct as are all attorneys.
>
> Finally, for a third time, the Court warns both the Defendants and Mr. Woods that any failure to respond to the Plaintiff's Requests to Produce and Interrogatories, to appear for Ms. Hoskins' deposition, or to pay the Plaintiff's attorneys' fees related to the subject motion, each ordered below, or to respond to any other of the Plaintiff's reasonable discovery requests or to otherwise comply fully with any of the Court's Orders, the Local Rules, or the Rules of Civil Procedure, <u>will</u> result in the imposition of further, more severe sanctions. **Sanctions will include <u>the Defendants and/or their counsel</u> being required to pay the Plaintiff's costs, including an award of reasonable attorney's fees, and may also include entry of judgment on the Plaintiff's claims.**

"Memorandum and Order" at 8-9 (document #31) (emphasis in original).

Because the deadline for making the discovery responses had passed and Plaintiff's counsel had refrained from serving his fee affidavit or attempting to schedule Ms. Hoskins' deposition until after the Defendants' Motion to Alter or Amend Judgment had been resolved, the Court affirmed the relief previously granted but with new deadlines, as follows:

On or before September 30, 2005, the Defendants shall serve complete verified supplemental responses to the Plaintiff's "First Request for Production of Documents" and "First Set of Interrogatories." **The Defendants are advised that no further extensions will be granted for serving the subject responses, and responses served after September 30, 2005 will not be considered by the Court.**

Plaintiff's counsel shall promptly serve on counsel for the Defendant, Freddie L. Woods, Jr., an Affidavit setting forth the attorneys' fees, including a breakdown of the time (whether expended by Mr. Dortch and/or members of his firm) and the hourly rate(s) that were (or would be) billed to the Plaintiff, as well as other costs that the Plaintiff has incurred, concerning the Plaintiff's "Motion to Show Cause and for Default Judgment," and Mr. Woods shall promptly serve copies of both the Affidavit and this Memorandum and Order on the Defendants.

Within 30 days of Mr. Woods' receipt of said Affidavit, Mr. Woods and the Defendants shall remit directly to Plaintiff's counsel the full amount of the Plaintiff's attorneys's fees and costs as stated in the Affidavit. **Mr. Woods shall pay from his personal funds one-half (1/2) of those attorneys' fees and costs and will not seek reimbursement from the Defendants for that portion of the attorneys' fees and costs**.

At a date and time mutually convenient to the parties but no later than October 31, 2005, and at a location in Charlotte, North Carolina designated by the Plaintiff, Michelle Hoskins shall appear for her deposition. Mr. Woods shall bear the cost of his travel to and from Charlotte out of his personal funds, that is, as with his portion of the attorneys' fees and costs, awarded above, he will not seek reimbursement from the Defendants for that expense.

Id. at 9-10 (emphasis in original).

On August 30, 2005, Mr. Dortch sent Mr. Woods his "Affidavit for Attorney Fees" via FedEx Priority Overnight delivery, showing in detail that the Plaintiffs had incurred $5,432 in attorneys' fees concerning the discovery motions discussed above.

Although Mr. Woods received Mr. Dortch's Affidavit at 9:42 a.m. on August 31, 2005, as of the present date, neither Mr. Woods nor the Defendants have paid their one-half share of those fees ($2,716 each) to Mr. Dortch's firm, despite the fact that under the terms of the August 16, 2005 Memorandum and Order, those payments were due no later than September 30, 2005.

In an October 7, 2005 letter addressed to the Court, Ms. Hoskins explained that she had terminated her relationship with Mr. Woods the same day via a termination letter (a copy of which she attached), and stated that Mr. Woods had not contacted her during the previous two months, that she had not known about the discovery disputes, and that she would be out of her office until October 18, 2005, but that upon returning, she would retain substitute counsel who would contact Mr. Dortch "immediately." See Document #32. As of this date, however, Mr. Woods has not filed a Motion to Withdraw, nor has any substitute counsel made an appearance on the Defendants' behalf. Moreover, in her letter, Ms. Hoskins made no mention of paying her portion of the Plaintiff's attorneys' fees that were by then one week overdue.

On October 11, 2005, Mr. Dortch received from Mr. Woods, without any accompanying letter or other explanation, a second "Affidavit of Michelle Hoskins," which she had signed before a Notary Public on July 29, 2005. See Exhibit E to "Plaintiff's Motion to Show Cause and for Default Judgment" (document #33). Attached to the Affidavit were photocopies of the following documents: the Defendants' tax returns for 1996, 1998, and 2000-2003, and balance sheets for 1996 and 1999, Ms. Hoskins' "Chicago Minority Business Development Certificate," and "checks made to brokers for the years 2000 and 2002-2005." Id.

As the Plaintiff points out in its present Motion, this belated production was wholly inadequate in that the Defendants still have not produced, among other things, their Articles of

Incorporation and other corporate documents, purchase and sales orders, loan applications and related documents establishing the Defendants' gross revenue and earnings, documents that the Defendants contend constitute the contract between the parties, co-packer agreements, contracts with other brokers/agents, correspondence between the parties, correspondence with third parties concerning the Plaintiff, and customer lists, all of which the Defendants have been ordered to produce in three previous Orders.

On October 17, 2005, Mr. Dortch was contacted by a local attorney (whose identity is not disclosed in the record) who indicated that he had been contacted by the Defendants but had not been retained.

On October 19, 2005, Mr. Dortch received a similar telephone call from an attorney practicing in Illinois.

On October 25, 2005, the Plaintiff filed its "Motion to Show Cause and for Default Judgment" which the Defendants have wholly ignored, despite both the sanctions that the Plaintiff seeks, including a default judgment exceeding $950,000, and the Court's repeated warnings that sanctions would be imposed if the Defendants failed to comply with the Court's earlier Orders. The Plaintiff's base their calculation of the damages to which they are entitled to recover on an otherwise unspecified statement that Ms. Hoskins allegedly made in a television interview to the effect that for the years 2002-2003, the time period that the Plaintiff contends it was entitled to receive commissions on the Defendants' sales, her company had gross sales of $8 million. See Document #33 at 8, n.1.

The Plaintiff's Motion has been briefed as set forth above and is, therefore, ripe for disposition.

# II. DISCUSSION

As the Defendants and Mr. Woods have now been warned <u>three</u> times, a variety of sanctions are available under Rule 37 for a party and/or its attorney's failure to obey rules governing discovery and orders of the district court, including imposing costs and attorneys' fees, striking pleadings, and/or entering default and a default judgment against the offending party/attorney. <u>See</u> Fed. R. Civ. P. 37(b); <u>National Hockey League v. Metro. Hockey Club</u>, 427 U.S. 639, 643 (1976); <u>Mutual Fed. Sav. & Loan v. Richards & Assocs.</u>, 872 F.2d 88, 92 (4th Cir. 1989); <u>and</u> <u>Wilson v. Volkswagen of America, Inc.</u>, 561 F.2d 494, 504-05 (4th Cir. 1977).

In <u>Mutual Federal</u>, the Fourth Circuit restated the four factors a district court should consider in deciding whether to impose the sanctions of dismissal or entry of judgment. These factors are:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

<u>Id.</u>, 872 F.2d at 92, <u>citing</u> <u>Wilson</u>, 561 F.2d at 503-04.

Applying these legal principles to the record in this case, clearly, the Plaintiffs have established the first two factors stated in <u>Mutual Federal</u>, 872 F. 2d. at 92. First, the Defendants have repeatedly acted in bad faith, that is, they have ignored both the Plaintiff's repeated attempts to resolve discovery issues informally and the Court's Orders compelling them to make proper discovery responses and to pay attorneys' fees and warning them of the dire consequences of failing to do so, and the Defendants have also failed to respond to the subject Motion. The Defendants' failure to make complete discovery responses has also prejudiced the Plaintiff's ability to prosecute its claims, that is, to meet its burden of proof as to the existence and breach of a contract.

Concerning the third Mutual Federal element, it is axiomatic that a party may not unilaterally refuse to respond to an opposing party's discovery requests or disobey direct and repeated orders compelling discovery, and that this behavior must not only be addressed in this case, but deterred in future cases. Accord Metro. Hockey Club, 427 U.S. at 643; Mutual Federal, 872 F.2d at 92; and Wilson, 561 F.2d at 504-05 .

Finally, as discussed above, in an attempt to obtain the Defendants' compliance with Court's March 8, 2005 Memorandum and Order compelling them to make discovery, on June 27, 2005, the Court again ordered the Defendants to serve proper discovery responses, repeated its earlier warning, and to deter further nonfeasance, required both the Defendants and Mr. Woods personally to pay a significant amount of the Plaintiff's attorneys' fees. However, these lesser sanctions have not had their intended effect. Indeed, rather than paying those attorneys' fees, producing the compelled discovery responses, and otherwise remedying their unacceptable conduct in this case, the Defendants and Mr. Woods responded only with Mr. Woods' unsubstantiated claims about his mental health, the insufficient production attached to Ms. Hoskins' second July 29, 2005 Affidavit that was not received by the Plaintiff until October 11, 2005, and Ms. Hoskins' October 7, 2005 letter (which contradicts her earlier sworn statements, that is, Ms. Hoskins now contends that Mr. Woods had not communicated with her during the previous two months and that until only recently, she had been unaware of the protracted discovery dispute and the Court's earlier Orders.)

In short, in light of both the Defendants' and Mr. Woods' egregious failure to make proper discovery, to comply with the Court's Orders, the Local Rules, and the Rules of Civil Procedure, and to respond to the subject Motion, the Court will grant in part the Plaintiff's Motion and enter default against the Defendants, that is, the Plaintiff is granted judgment against the Defendants on the issue

of liability. Concerning the amount of the default judgment, however, because the Plaintiff has not yet offered admissible evidence concerning the Defendants' sales and the Plaintiff's corresponding lost commissions, the Court will submit the issue of damages to a jury, as ordered below.

Moreover, concerning Mr. Woods' and the Defendants' failure to pay attorneys' fees as they have been twice ordered to do, the Court will order Mr. Woods and Ms. Hoskins, as the Defendants' President, to appear during the same trial term and show cause why each should not be held in contempt of Court.

## III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The "Plaintiff's Motion to Show Cause and for Default Judgment" (document #33) is **GRANTED IN PART** and **DENIED IN PART**, that is:

a. Default is **ENTERED** against the Defendants and the Plaintiff is **GRANTED JUDGMENT** on the issue of liability; and the Plaintiff's motion for attorneys' fees and costs in connection with the subject Motion is also **GRANTED**.

b. The Clerk is directed to place this matter on the calendar for the Court's February 6, 2006 Civil Jury term for a trial on the issue of damages only.

c. **Plaintiff's counsel shall promptly serve on both Michelle Hoskins, at the address stated below, and counsel of record for the Defendant, Freddie L. Woods, Jr., an Affidavit setting forth the attorneys' fees, including a breakdown of the time (whether expended by Mr. Dortch and/or members of his firm) and the hourly rate(s) that were (or would be) billed to the Plaintiff, as well as other costs that the Plaintiff has incurred, concerning the subject**

"Motion to Show Cause and for Default Judgment" filed October 25, 2005 (document #33).

    d.  Within 30 days of their receipt of said Affidavit, Mr. Woods and the Defendants shall remit directly to Plaintiff's counsel the full amount of the Plaintiff's attorneys's fees and costs as stated in the Affidavit. **Mr. Woods shall pay from his personal funds one-half (1/2) of those additional attorneys' fees and costs and will not seek reimbursement from the Defendants for that portion of the attorneys' fees and costs**.

    e.  **Michelle Hoskins and Freddie L. Woods, Jr. each shall be personally present on Monday, February 6, 2006 at 9:30 a.m. in Courtroom Number One of the United States Courthouse, 401 West Trade Street, in Charlotte, North Carolina, to show cause why they should not be held in contempt of Court for failing to pay attorneys' fees as ordered in the "Memorandum and Order(s)" entered August 16, 2005, and November 28, 2005 (documents ## 31 and 34).**

    e.  **Mr. Woods and Ms. Hoskins are required to be present even in the event that they pay in full the outstanding attorneys' fees ($5,432 plus the fees stated in the second Affidavit discussed above) in the interim, or if they believe that the underlying discovery conflict has been resolved, that is, neither the parties nor their counsel may unilaterally cancel the Show Cause Hearing under any circumstances. Mr. Woods and Ms. Hoskins are additionally ordered to attend the hearing fully prepared and able to pay both the outstanding attorneys' fees, if they have not been paid in the interim, as well as any other monetary sanctions that the Court may impose at the conclusion of the hearing, should the undersigned conclude that the evidence of malfeasance is sufficiently clear to rule at that time.**

    2.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the

parties; as well as to the following:

Ms. Michelle Hoskins
1600 West 167th Street, Suite 20
Calumet City, Illinois 60409

Ms. Mary T. Robinson, Administrator
Attorney Registration and Disciplinary Commission
One Prudential Plaza
130 East Randolph Drive, Ste. 1500
Chicago, Illinois 60601-6219


**SO ORDERED, ADJUDGED, AND DECREED.**

**Signed: November 28, 2005**

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge